IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES G. BELSHAW and
ELIZABETH STALEY,

      Plaintiffs,

v.                                                                     Case No. 1:22-cv-324 KRS/LF

CRAIG A. YOST, LISA A. YOST,
MARTHANNE REINHARD, and
VILLAGE OF CORRALES,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Village of Corrales's Motion to Dismiss or

in the Alternative for Summary Judgment (Doc. 28), filed July 15, 2022. James G. Belshaw and

Elizabeth Staley ("Plaintiffs") assert various claims against adjacent property owners, Craig and

Lisa Yost and Marthanne Reinhard ("the Yost defendants") as well as the Village of Corrales

("the Village"). With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C.

§ 636(c), the Court has considered the parties' submissions and the applicable law, as well as the

record. Having done so, the Court concludes that the Village's motion will be **granted in part**.

## I.     PROCEDURAL BACKGROUND

This case arises from the Village's 2018 issuance of a building permit for a structure on

property owned by the Yost defendants at 153 Silva Court, which is situated adjacent to property

owned and occupied by Plaintiffs at 627 Sagebrush Drive within the Village of Corrales.

Plaintiffs assert that the Village permitted the Yost defendants to construct a second dwelling at

153 Silva Court in violation of the Village Code. On March 28, 2022, Plaintiffs filed their

Amended Complaint in the Thirteenth Judicial District, County of Sandoval, State of New

Mexico. Doc. 3-56. In that Complaint, Plaintiffs bring the following claims against the Village

related to the Yost defendants' construction project:

> Count IX: Writ of Mandamus. *Id*. at 21-22.

> Count X: Procedural and Substantive Due Process claims under the New Mexico
> Constitution and the United States Constitution. *Id*. at 22-23.

> Count XI: Equal Protection claims under New Mexico Constitution and the United States
> Constitution. *Id*. at 23-24.

The Village removed this case on April 28, 2022. *See* Doc. 1. On July 15, 2022, the

Village filed the instant motion, arguing that Plaintiffs' claims against it should be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative that summary

judgment should be granted in its favor. Doc. 28.

A court must treat a Rule 12(b)(6) motion to dismiss as a motion for summary judgment

when the court considers matters outside the plaintiff's complaint. *See Lowe v. Town of

Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("A motion to dismiss for failure to state a claim

. . . must be converted into a motion for summary judgment whenever the district court considers

matters outside the pleadings.") (citing Fed. R. Civ. P. 12(b)(6)). When converting a motion to

dismiss into a motion for summary judgment, a court must generally give the parties notice of

the changed status of the motion and provide them with an opportunity to present all material

pertinent to the motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Brown v. Zavaras*, 63

F.3d 967, 969 (10th Cir. 1995).

Here, the Village filed its motion as a Rule 12(b)(6) motion to dismiss, or, in the

alternative, a Rule 56 motion for summary judgment, putting the parties on notice that the Court

might consider the motion as one for summary judgment. *See* Doc. 28. Because both the Village

and Plaintiffs presented evidence outside the pleadings for the Court's consideration, the Court is not required to give the parties additional notice before treating the Village's motion as one for summary judgment. *See Wheeler v. Hurdman*, 825 F.2d 257, 259-60 (10th Cir. 1987) (explaining that the court is not required to provide additional notice before treating a motion to dismiss as a motion for summary judgment when both parties submit materials beyond the pleadings in support of their briefs).

The Court finds that the portion of the Village's motion related to Plaintiffs' state constitutional claims, which are asserted pursuant to the NMTCA, and their request for a Writ of Mandamus can be resolved under the Rule 12(b)(6) standard. In contrast, resolution of the statute of limitations issue for Plaintiffs' federal constitutional claims and of Plaintiffs' Equal Protection claim requires the Court to consider factual matters outside the pleadings. The Court will therefore construe the Village's motion as one for summary judgment as to those claims. *See Lowe*, 143 F.3d at 1381. As explained herein, the Court reserves ruling on Plaintiffs' procedural due process and substantive due process claims asserted under the U.S. Constitution.

## II.     FACTUAL BACKGROUND[1]

Plaintiffs and the Village have stipulated that the relevant filing date for purposes of resolving the Village's instant Motion is January 7, 2022, the date Plaintiffs filed a stand-alone case against the Village. *See* Doc. 28 at Undisputed Fact ("UF") ¶ 1; Doc. 36 at 6; *see also* Doc. 28-A. The Village removed the January 7, 2022 stand-alone case to this Court, which has since been dismissed. *See Belshaw v. Vill. of Corrales*, 1:22-CV-0176 MV/LF (D.N.M.).

---

[1] The Court recites all factual allegations in a light most favorable to Plaintiffs as the non-moving parties, with all reasonable inferences from the record drawn in their favor. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1189 (10th Cir. 2000).

The Village is a municipal corporation located in Sandoval County, New Mexico. Doc. 28 at UF ¶ 2; Doc. 3-56 ¶ 3. Plaintiffs reside at property they own at 627 Sagebrush Drive within the Village of Corrales. Doc. 28 at UF ¶ 3. The Yost defendants reside at 153 Silva Court, which is adjacent to Plaintiffs' property. Doc. 3-56 ¶¶ 1, 2, 10.

A Village ordinance, followed since 1972, allows "one dwelling unit per one lot." Doc. 36 at Additional Fact ("AF") ¶ C (citing Docs. 36-1 ¶¶ 29-30; 36-1.1; 36-1.2).[2] Nevertheless, on May 29, 2018, the Yost defendants obtained a building permit from the Village of Corrales for the construction of a structure at 153 Silva Court. *Id*. at ¶ 11. In their application for the permit, the Yost defendants omitted the "work description." Doc. 3-56 ¶ 12; *see also* Doc. 36-2.2(A) at 2. The permit identified the permit type as a "Res[idential] Addition" and the project as a "workshop." Doc. 3-56 ¶ 12; Doc. 36-2.2(B). Two Days after the permit was approved, on May 31, 2018, the Yost defendants submitted plans to the Village. Doc. 3-56 ¶ 13. The plans depict a dwelling unattached to the existing residence with areas designated for a bedroom, living room, laundry room, storage closets, dressing lounge, and covered patios and porches. *Id*. Additionally, the plans show a second space with the hand-written label: "dining." *Id*.; Doc. 36 at 44. This second "dining" area includes a pantry, countertops, cabinets, a refrigerator, dishwasher, and utility hook-ups. Doc. 3-56 ¶ 13; Doc. 36 at 44.

---

[2] The Village disputes Plaintiffs' statement of fact concerning the Village's "one dwelling unit per one lot" ordinance, arguing that the ordinance is "not material to the issues" and that it merely reflects Plaintiff Staley's interpretation of the ordinance. Doc. 39 at 3. The Village emphasizes that "Plaintiffs do not speak for the Village." *Id*. But even putting aside Plaintiff Staley's affidavit, a July 21, 2021 letter from Laurie Stout, then-Planning and Zoning Administrator for the Village of Corrales, to homeowners Ken and Kathleen Dehoff explains that the Village ordinance permitting only "one dwelling unit per one lot" was "a backbone provision in the Village since 1972." *See* Doc. 36-1.2. According to Ms. Stout's letter, the ordinance was amended in June 2021 to clarify the definition of "dwelling unit" and to include a single unit with rooms for "living, sleeping, eating, cooking and sanitation," which are "part of the same contiguous heated space[] and are accessible through the same door." Doc. 36-1.2 at 1. Notably, the Village does not dispute the authenticity of Ms. Stout's July 21, 2021 letter. *See* Doc. 39.

Following the issuance of the building permit, construction began on the Yost defendants' structure in July 2018. Doc. 3-56 ¶ 14. The Yost defendants, however, did not post the building permit when construction commenced. *Id*. Plaintiffs contacted the Village on July 28, 2018, to inquire about the legality of the Yost defendants' construction project. *Id*. ¶ 15. Specifically, Plaintiff Staley emailed Corrales Community Development Coordinator Laurie Stout to advise her that a second stand-alone dwelling was being constructed at 153 Silva Court. *Id*. Plaintiff Staley also notified Planning and Zoning Administrator/Village Administrator Suanne Derr, who indicated that she would follow up with Plaintiff Staley's concern. *Id*.

On July 30, 2018, Ms. Stout sent an e-mail to Plaintiff Staley, suggesting that if the Yost defendants' construction project "turns into something other than a workshop, [the Village] can shut that down." *Id*. ¶ 16. After Ms. Stout informed Plaintiff Staley that Village Building Inspector Lee Brammeier was permitting the Yost defendants' construction of the structure to continue, Plaintiffs again raised objections with Ms. Derr, the Village Administrator and Planning and Zoning Administrator. *Id*. ¶¶ 17-18.

On August 24, 2018, Ms. Derr held a meeting with Mr. Brammeier, Ms. Stout, and Plaintiffs to discuss the Yost defendants' construction project, to review the relevant Village ordinances, and to provide an official determination regarding the project. *Id*. ¶ 18. At that meeting, Plaintiffs briefly observed a small portion of the Yost defendants' building plans and noted that they depicted a second stand-alone dwelling instead of a "workshop." *Id*. However, at that time Plaintiffs did not have in their possession any documents related to the Yost defendants' construction project. *Id*. Also on August 24, 2018, Mr. Brammeier updated the electronic building permit and inspection detail list to identify the Yost defendants' construction project as an "accessory structure." *Id*. ¶ 19; Doc. 36-2.2(D). Mr. Brammeier explained that he

"changed [the] project from workshop [to accessory structure] to better reflect plans." Doc. 3-56, ¶ 19. That same day, Plaintiffs filed an Inspection of Public Records Act ("IPRA") request in an attempt to obtain information about the Yost defendants' construction project. *Id*. ¶ 20. On August 29, 2018, the Village provided responsive documents to Plaintiffs, including 21 pages of drawings, a permit application and permit, and five pages of building plans. *Id*. ¶ 21.

On August 26, 2018, Suanne Derr explained in a follow-up e-mail to Plaintiff Staley that the Yost defendants' project began under the "former building official" but that the "current building official" had continued the inspection process and "found no reason to stop construction." Doc. 28-B at 4. Ms. Derr went on to explain that "[a]ccessory buildings" have always been allowed pursuant to the Village's ordinances and that upon consultation with the Village attorney, per Plaintiff Staley's request, the attorney agreed that accessory buildings were not prohibited. *Id*. Above the body of Ms. Derr's e-mail message to Plaintiff Staley is the following note: "This is what I had sent to Liz after the meeting on the 24th. I'm not sure I made a decision, but we can include this in the timeline. Suanne." *Id*.

On September 4, 2018, Plaintiffs filed a second IPRA request to verify that the Village had provided all relevant documents related to the Yost defendants' construction project. Doc. 3-56 at 22. The Village failed to respond to Plaintiffs' second IPRA request until late December 2018, after Plaintiffs retained legal counsel. *Id*.

On September 14, 2018, Plaintiffs filed a written appeal of the Village building inspectors' decision to issue a building permit for 153 Silva Court and the Village's failure to stop construction of the Yost defendants' project. Doc. 3-56 ¶ 24; Doc. 28 at UF ¶ 4. Three days later, on September 17, 2018, Plaintiffs filed a second written appeal of the Village Administrator's decision not to stop construction at 153 Silva Court. Doc. 3-56 ¶¶ 2, 5; Doc. 28

at UF ¶ 5. In their second appeal, Plaintiffs asked the Village to stop construction until its Governing Body could determine, at a public hearing, the legality of the project. Doc. 3-56 ¶ 26. No public hearings were scheduled concerning Plaintiffs' first or second appeals. *Id*. ¶ 27. The Village contends that a decision regarding both appeals was "tendered on January 2, 2019." Doc. 28 at UF ¶ 7.

The Yost defendants' construction project appeared complete sometime in late November or early December 2018. Doc. 3-56 ¶ 29. On December 7, 2018, the Village issued a Certificate of Occupancy to the Yost defendants for their "accessory building." *Id*.; *see also* Doc. 28 at UF ¶ 6. The Village produced the Certificate of Occupancy to Plaintiffs on December 28, 2018, in response to their earlier IPRA request. Doc. 36-2 ¶ 7.

On January 2, 2019, the Village's attorney sent a letter to Plaintiffs' attorney, attempting to "address[ Plaintiffs'] allegations" and to explain why Plaintiffs "were not entitled to a public hearing on their attempted appeals."[3] *See* Doc. 28-B. Specifically, the Village's attorney indicated that because the Yost defendants' building permit was issued on May 29, 2018, Plaintiffs' September 14, 2018 appeal was outside of the 20-day appeal period. *Id*. at 3. With regard to Plaintiffs' September 18, 2018 letter, which purported to appeal an August 14, 2018 action by the Village, the Village attorney explained that "Village records regarding this matter do not reflect any 'action' taken by the Village's building official on August 14, 2018." *Id*. Even if Village officials had taken some relevant action on August 14, 2018, the Village attorney observed that September 14, 2018, was more than 20 days after the date of the alleged action. *Id*. Because the Village attorney found no Village decision regarding the Yost defendants'

---

[3] The Village characterizes this letter as its final decision on Plaintiffs' appeals, but Plaintiffs assert that discussions continued between the Village and Plaintiffs until the Village's January 24, 2019 letter. Doc. 36 at 3 (citing Doc. 36-2, ¶¶ 10-15; Doc. 3-56 ¶¶ 33-35).

construction project "prior to the 20-day deadline of the Sept. 14 Letter or the Sept. 18 Letter," he indicated that "there was no decision subject to appeal." *Id*. Additionally, the Village attorney explained that Plaintiffs failed to perfect any appeal, as "[t]he Village's records [did] not reflect that [Plaintiffs] ever paid the applicable filing fee to take either of their attempted appeals." *Id*.

On January 10, 2019, Plaintiffs filed a third appeal. Doc. 28 at UF ¶¶ 6, 8; Doc. 36-2.2, at 1-3. Plaintiffs filed their third appeal within 20 days of receiving a copy of the previously-issued Certificate of Occupancy from the Village. Doc. 36-2.2 at 1-3. On January 17, 2019, Plaintiffs' counsel sent a letter to the Village's attorney noting that Plaintiffs had, on September 14, 2018, and September 17, 2018, requested a public hearing pursuant to §§ 8-24 and 18-49 of the Village of Corrales Code of Ordinances and, yet, no hearing had been provided. Doc. 36-2.3.

On January 24, 2019, the Village Administrator sent a letter to Plaintiffs' counsel in response to Plaintiffs' third appeal. Doc. 28-C. In that letter, the Village Administrator concluded that Plaintiffs "do not meet the requirements for an appeal of the decision by the building inspector[,]" as they were "not aggrieved persons for the Certificate" and because "the January 10, 201[9][4] appeal was not filed within the 20-day time frame for appeals." *Id*. at 2. Accordingly, the Village Administrator determined that the "appeal made by [Plaintiffs] dated January 10, 2019, must be denied." *Id*.; Docs. 36 at 3, 36-2 ¶¶ 10-15; 3-56 ¶¶ 33-35.

Plaintiffs submit that the January 24, 2019 letter was the Village's first and only final decision on their appeals and denial of their requests for a hearing as to the legality of the Yost defendants' construction project.[5] *See* Docs. 36 at 2-3; 36-1 ¶¶ 23-28; 36-2 ¶¶ 10-15; 3-56 ¶¶ 33-

---

[4] The Village Administrator references a "January 10, 2018 appeal"; however, it is clear from the letter's context that she was referring to the appeal filed on January 10, 2019. *See* Doc. 28-3 at 2.

[5] As noted above, the Village asserts, in contrast, that Plaintiffs' first and second appeals were decided on January 2, 2019. Doc. 28 at UF ¶¶ 7, 8. As discussed hereinafter, viewing the facts in the light most favorable to Plaintiffs, a material issue of fact exists as to whether the Village issued final decisions on

35. In other words, Plaintiffs assert that the Village's consideration of their appeals was not final until January 24, 2019.

Plaintiffs did not seek review by petition for writ of certiorari of any of the Village's decisions on their appeals under Rule 1-075 NMRA. Doc. 28 at UF ¶ 9 (citing Doc. 28-D).

## III.   LEGAL STANDARDS

### A.  Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and the Court may not consider matters outside the pleadings. *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007); *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989). The Court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Facial plausibility exists "when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### B.  Motion for Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

Plaintiffs' first two appeals in the Village attorney's January 2, 2019 letter or at any time before January 24, 2019. *See infra* at 12-13.

Civ. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record" to support their factual positions. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also Medlock v. United Parcel Serv., Inc*., 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted)). Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

## IV.   ANALYSIS

### A.  Statutes of Limitations for Federal Constitutional Claims

Plaintiffs assert that "[b]y refusing to accept and consider Plaintiffs' First Appeal, Second Appeal and/or Third Appeal" the Village violated their procedural due process, substantive due process, and equal protection rights under the U.S. Constitution. Doc. 3-56 at 22-24. The parties agree that N.M. Stat. Ann § 37-1-8's three-year limitation period applies to Plaintiffs' federal constitutional claims. *See* Docs. 28 at 4; 36 at 6; *see also Wilson v. Garcia*, 471 U.S. 261, 266-80

(1985) (reasoning that claims brought under 42 U.S.C. § 1983 are best characterized as personal injury actions and that the three-year statute of limitations in N.M. Stat Ann. § 37-1-8 therefore applies).[6] Although the parties stipulate that the operative complaint should be considered to have been filed on January 7, 2022 (*see* Docs. 28 at 4; 36 at 6), they take differing views as to when the limitation period began to run with respect to each of Plaintiffs' appeals.

The Village concedes that the claims premised upon Plaintiffs' third appeal are "within the three-year statute of limitations that governs § 1983 claims in New Mexico." Doc. 39 at 4 (citing *Sikkink v. Williams*, 406 F. Supp. 3d 1006, 1019 (D.N.M. 2019)). To the extent that Plaintiffs' claims are premised upon their first and second appeals, though, the Village maintains that those claims are barred by the applicable statute of limitation. *See* Doc. 28 at 4. The Village contends that Plaintiffs knew by at least January 2, 2019, that their first and second appeals had been denied by the Village. *Id*. Indeed, the Village submits that the January 2, 2019 letter from the Village attorney to Plaintiffs' attorney conveyed the Village's final determination that Plaintiffs' first and second appeals were denied because there was no underlying decision by the Village within the 20-day appeal window. Doc. 39 at 4-5. Thus, under the Village's view of the facts, claims premised upon Plaintiffs' first and second appeals and asserted on January 7, 2022, are outside the three-year limitation period and should be dismissed as untimely. Doc. 28 at 4.

Plaintiffs, for their part, argue that a genuine dispute of material fact exists as to when the Village denied their first and second appeals and triggered the commencement of the limitation

---

[6] The holding of *Wilson* was later superseded by statute when Congress enacted 28 U.S.C. § 1658, which provides that "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." *See Jones v. R.R Donnelley & Sons Co.*, 541 U.S. 369, 377-82 (2004). Importantly, though, § 1658's four-year limitation period only applies to "claims arising under statutes enacted after December 1, 1990 . . . ." *Id.* at 380. Because Plaintiffs' § 1983 claims arise under the Fifth and Fourteenth Amendments to the United States Constitution, rather than from any federal statutes enacted or amended after 1990, the three-year statute of limitations prescribed by N.M. Stat. Ann. § 37-1-8 applies to Plaintiffs' claims.

period. Doc. 36 at 6. Plaintiffs assert that they attempted, from July 2018 until January 24, 2019, to obtain a public hearing by the Village's Governing Body to determine the legality of the Yost defendants' construction project, but the Village ultimately allowed the project to continue in violation of § 18-33(3) of the Village Code without such a hearing. Doc. 36 at 6. With respect to the statute of limitation issue, Plaintiffs reject the Village's implication "that each of the First Appeal, Second Appeal and Third Appeal were independent and separate appeals" that "can be separated and viewed independently." *Id*. at 3 (citing Docs. 36-1 ¶¶ 23-28; 36-2 ¶¶ 10-15; 3-56 at 33-35). Plaintiffs submit that, instead, the three appeals should be viewed as "parts of one continuous appeal to obtain a hearing regarding the illegality of the Second Stand-Alone Dwelling/Casita." Doc. 36 at AF ¶ C. In Plaintiffs' Amended Complaint, though, they themselves regard their appeals as discrete events, referring to a "First Appeal" filed on September 14, 2018 (Doc. 3-56 ¶ 24), a "Second Appeal" filed on September 17, 2018 (*id*. ¶ 25), and a "Third Appeal" filed within 20 days of receipt of the Certificate of Occupancy (*id*. ¶ 32). In opposing the Village's motion, Plaintiffs suggest that, despite being filed on different dates and involving distinct official actions, their appeals all had the same aim: to obtain a public hearing concerning the legality of the Yost defendants' building project and ultimately to halt construction of that project. Doc. 36 at 6.

Although a similar objective is apparent in each of Plaintiffs' appeals, the Court is not persuaded that they should be considered collectively without any distinction whatsoever. After all, Plaintiffs themselves treated the appeals separately in their Amended Complaint. But neither is the Court convinced that summary judgment is appropriate as to the timeliness of Plaintiffs' claims.

Plaintiffs contend that the Village first communicated its final decision on all three of their appeals on January 24, 2019, when the Village Administrator sent a letter to Plaintiffs' counsel denying the relief requested. Doc. 36 at 6-7. The Village, on the other hand, insists that Plaintiffs' first two appeals were resolved earlier, on January 2, 2019. *See* Doc. 28 at 4. As discussed above, the Village maintains that a January 2, 2019 letter from its attorney, Charles V. Garcia, to Plaintiffs' attorney, Alexandria Lopez, conveyed the Village's final action on the first and second appeals. *See id*. Based upon its own reading of Mr. Garcia's January 2, 2019 letter, though, the Court finds a genuine dispute of material fact in this regard.

First, the January 2, 2019 letter is written by the Village attorney on his firm's letterhead, rather than by a Village official on the Village's letterhead. *See* Doc. 28-B. Further, the letter does *not* unequivocally state that it is a final decision on Plaintiffs' first and second appeals. *See id*. Rather, it could be construed to convey Mr. Garcia's *opinion* that Plaintiffs' appeals were untimely, that they were not based upon a "decision" of a Village official, and that they had not been perfected by the payment of a filing fee. *See generally id*.; *see also* Doc. 36-2 ¶ 10 (Ms. Lopez explaining, "In no manner did I understand [the January 2, 2019] letter to be a final decision regarding any of the issues related to the Casita."). Significantly, Mr. Garcia's letter invites Plaintiffs and Ms. Lopez to provide proof of payment of the filing fee for the appeal and to contact him if they "would like to discuss the matter further." Doc. 28-B. Significantly, Mr. Garcia's January 2, 2019 letter stands in contrast to the Village Administrator's January 24, 2019 letter in that the latter was authored by a Village official on Village letterhead, clearly communicates that the "appeal is being denied," and omits any invitation for further discussion or provision of proof. *Compare* Doc. 28-B, *with* Doc. 28-C.

The Village rightly points out that the Village Administrator's January 24, 2019 letter focuses on Plaintiffs' third appeal, rather than addressing Plaintiffs' earlier appeals. *See* Doc. 28-C. But in the Court's view this does not preclude a finding that the letter also indicated the cessation of further consideration of Plaintiffs' appeals and a final denial of their requests for a public hearing as to the legality of the Yost defendants' construction project. Notably, Plaintiffs' counsel avers that she and Mr. Garcia continued to correspond concerning Plaintiffs' first and second appeals even after her receipt of the January 2, 2019 letter. *See, e.g.*, Doc. 36-2 ¶ 12 ("Between January 2, 2019, and January 24, 2019, I continued correspondence with Mr. Garcia regarding the Plaintiffs' earlier appeals."). And Plaintiffs point to a January 17, 2019 letter in which Ms. Lopez provided Mr. Garcia additional information and argument concerning Plaintiffs' first and second appeals.[7] Doc. 36-2.3. After outlining Plaintiffs' position in response to the points articulated by Mr. Garcia in his January 2, 2019 letter, Ms. Lopez gave the Village officials until January 25, 2019, to schedule a public hearing on Plaintiffs' appeals, after which time she indicated Plaintiffs would seek a writ of mandamus in state court. *Id*. at 3. At the very

---

[7] In her correspondence, Ms. Lopez argues that once the Village Administrator "was made aware of [Plaintiffs'] assertions, she had two choices: 1) to stop construction and further investigate [Plaintiffs'] assertions; or 2) fail to investigate [Plaintiff's] claims and allow construction to continue." Doc. 36-2.3 at 2. Ms. Lopez insists that the Village Administrator chose the latter, conveying as much in her August 26, 2018 e-mail to Plaintiff Staley, which reports that the Village "found no reason to stop construction." *See* Doc. 36-2.3 at 2. In response to Mr. Garcia's position that Plaintiffs' appeals were untimely, Ms. Lopez explains that Plaintiffs were without notice that the building permit had been issued to the Yost defendants until sometime after construction began on the structure. *Id*. Moreover, she notes that Plaintiffs were "not in possession of the information for the basis of their Appeal to challenge the award of the May 29, 2018 building permit until August 28, 2018, when [they] received a copy of the building plans from the Village in response to [their] IPRA request." *Id*. at 3. Ms. Lopez highlights the potential for abuse inherent in the Village's construction of its own appeal ordinance – that is, an individual could obtain a building permit and wait more than 20 days before commencing construction, effectively denying his neighbors any opportunity to appeal the decision to award the building permit. Doc. 36-2.3 at 2-3. As to Mr. Garcia's contention that Plaintiffs' appeals were not perfected absent payment of a filing fee, Ms. Lopez explains that the Village Secretary informed Plaintiff Staley that she did not know the amount of the filing fee and that she would contact Plaintiff Staley with the correct filing fee amount. *Id*. at 3.

least, Plaintiffs and their counsel operated as if the Village's consideration of their first two appeals was ongoing, and Mr. Garcia's January 2, 2019 letter did not foreclose the possibility that the Village continued to consider those appeals and the relief requested therein.

Although it is a close call, the Court finds that, viewing the evidence in the light most favorable to Plaintiffs, a reasonable factfinder could conclude that Mr. Garcia's January 2, 2019 letter did *not* constitute or convey the Village's final decision on Plaintiffs' first and second appeals. Because the Village does not point to any evidence from between January 2, 2019 and January 24, 2019, in which it clearly and unequivocally conveyed the Village's final decision on Plaintiffs' first and second appeals, a reasonable factfinder could conclude that they were not resolved until the time of the Village Administrator's January 24, 2019 letter, which was less than three years prior to the stipulated filing date of Plaintiffs' Amended Complaint. In other words, a genuine issue of material fact exists as to when Plaintiffs' first and second appeals were denied by the Village, and the Court therefore cannot award summary judgment on the basis that Plaintiffs' § 1983 claims were not asserted within the applicable period. As to Plaintiffs' federal constitutional claims, the Court will deny the Village's motion on this ground.

### B.  Statute of Limitations for State Constitutional Claims

In addition to their federal constitutional claims, Plaintiffs assert due process and equal protection claims under the New Mexico Constitution. *See* Doc. 3-56 at 22-25. The Village argues that these state constitutional claims are also barred by the applicable statute of limitations, albeit under a different provision of state law. Doc. 28 at 4.

The New Mexico Constitution's due process clause and equal protection clause are virtually identical to those of the Fifth and Fourteenth Amendments to the U.S. Constitution. *Compare* N.M. Const. art. II, § 18, *with* N.M. Const. amend. V, XIV. There is, however, no

private cause of action available to enforce these provisions of the New Mexico Constitution against a governmental entity. *See Chavez-Rodriguez v. City of Santa Fe*, No. CIV 07-633 JB/DJS, 2008 WL 5992269, at *6 (D.N.M. Oct. 17, 2008); *see also Barreras v. N.M. Corr. Dep't*, 62 P.3d 770, 776 (N.M. Ct. App. 2002) ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act.") (citations omitted); *Chavez v. City of Albuquerque*, 952 P.2d 474, 477 (N.M. Ct. App. 1997). Nor can Plaintiffs rely upon § 1983 to create a cause of action for a violation of state constitutional law. *See Chavez-Rodriguez*, 2008 WL 5992269, at *6. Rather, the New Mexico Tort Claims Act ("NMTCA") constitutes the "exclusive remedy against a governmental entity . . . for any tort for which immunity has been waived." N.M. Stat. Ann. § 41-4-17; *see also Rico-Reyes v. New Mexico*, 503 F. Supp. 3d. 1055, 1058 (D.N.M. 2020) ("Like § 1983, the NMTCA provides a mechanism to sue under the New Mexico Constitution for certain 'constitutional torts.'"). Although Plaintiffs do not reference the NMTCA in their Amended Complaint, *see* Doc. 3-56, they do not dispute that the NMTCA provides the exclusive remedy against the Village for their claims under the New Mexico Constitution, *see* Doc. 36.

Critically, the NMTCA's statute of limitations provides that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within ***two years*** after the date of occurrence resulting in loss, injury or death . . . ." N.M. Stat. Ann. § 41-4-15(A) (emphasis added). Thus, assuming a waiver of immunity,[8] the

---

[8] The Village advances an alternative argument as to why Plaintiffs' constitutional claims cannot stand: that "Plaintiffs can point to no waiver of immunity for claims against Village for alleged violation of state constitutional rights." Doc. 28 at 5. The Court takes up this issue below. *See infra* Part IV.C.

Village maintains that Plaintiffs' state constitutional claims, which are premised upon the

Village's refusal to accept or consider each of their three appeals, are barred under N.M. Stat.

Ann § 41-4-14(A)'s two-year statute of limitations.[9]

Relying upon *Wilson v. Garcia*, 471 U.S. 261 (1985), Plaintiffs contend that "because

[they] have pursued their constitutional claims under both the New Mexico Constitution and the

U.S. Constitution, the applicable statute of limitations for all claims in the Amended Complaint

is three (3) years." Doc. 36 at 8. But *Wilson* does not support Plaintiffs' proposition. In *Wilson*,

the petitioners moved to dismiss the respondent's § 1983 claim on the ground that it was barred

by the two-year statute of limitations in the NMTCA, which petitioners insisted was the "most

closely analogous state cause of action" to § 1983. *Wilson*, 471 U.S. at 263. The Supreme Court

disagreed, reasoning as follows:

> [W]e are satisfied that Congress would not have characterized § 1983 as providing
> a cause of action analogous to state remedies for wrongs committed by public
> officials. It was the very ineffectiveness of state remedies that led Congress to enact
> the Civil Rights Act in the first place. Congress therefore intended that the remedy
> provided in § 1983 be independently enforceable whether or not a duplicate of
> parallel state remedy.

*Id*. at 279 (citation omitted). This rationale led the Supreme Court to conclude that the

NMTCA's statute of limitation did not govern the timeliness of the respondent's § 1983 claim,

but instead the state's personal injury statute of limitations applied to the plaintiffs' § 1983 claim.

*Id*. at 270-72. Critically, in so holding, the Court did not address any state constitutional claims

arising from the same factual allegations. *See id*.

---

[9] As with their § 1983 claims, the Village contends that Plaintiffs' claims based upon the denial of their
first and second appeals accrued on January 2, 2019, while claims based upon the denial of their third
appeal accrued on January 24, 2019. Doc. 28 at 5.

Here, the Court is satisfied that the applicable limitation period for the state constitutional torts asserted pursuant to the NMTCA is two years, *see Rico-Reyes*, 503 F. Supp. 3d at 1057,[10] whereas the limitation period for claims made pursuant to § 1983 claims is three years, *see* N.M. Stat Ann. § 37-1-8. Plaintiffs cite no authority to support the notion that N.M. Stat Ann. § 37-1-8's three-year statute of limitations applies to claims asserted under the New Mexico Constitution simply because similar claims were also asserted under the U.S. Constitution. *See* Doc. 36. The Court rejects this argument in favor of the Village's position.

Even assuming that Plaintiffs' state constitutional claims did not accrue until January 24, 2019, when they received the letter from the Village Administrator denying their third appeal and their request for a public hearing, those claims remain barred by the applicable statute of limitations. Because no reasonable factfinder could determine that Plaintiffs asserted their state constitutional claims against the Village within two years of the Village officials' actions in denying those appeals, their claims are outside the applicable statute of limitations, and the Court will therefore grant summary judgment in the Village's favor as to these claims under the New Mexico Constitution. Claims asserted by Plaintiffs against the Village pursuant to the New Mexico Constitution are dismissed.

### C. Waiver of Immunity

Even if Plaintiffs had timely filed their state constitutional claims, the Village maintains that they fail for a separate reason. That is, for any claims asserted against the Village under New Mexico law, including those under the New Mexico Constitution, there must be a valid waiver of immunity under the NMTCA. *See Todd v. Montoya*, 877 F. Supp. 2d 1048, 1091 (2012). The

---

[10] In *Rico-Reyes*, Chief Judge William P. Johnson of this District explained that it is "well-settled" that the NMTCA governs claims against governmental entities under the New Mexico Constitution and imposes a two-year statute of limitations. 503 F. Supp. 3d at 1058.

Village insists that there is no applicable waiver here. Plaintiffs, on the other hand, submit that the "waiver of immunity for constitutional violations pursuant to NMSA § 41-4-12 (1978)" applies. Doc. 36 at 8. Section 41-4-12 provides:

> [t]he immunity granted pursuant to [the NMTCA] does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from . . . deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Plaintiffs argue that the definition of a law enforcement officer for purposes of this waiver is broad enough to include the Village Administrator. Doc. 36 at 8. A law enforcement officer is defined by N.M. Stat Ann. § 41-4-12 as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of a committing a crime, whether that duty extends to all crimes or is limited to specific crimes." § 41-4-12. Seizing upon the definition's use of the word "or," Plaintiffs argue that because the "Village Administrator is the ultimate authority over the Village and is vested by law with the power to maintain order in the Village," he or she falls within the definition. Doc. 36 at 9. Plaintiffs insist that because the Village Administrator qualifies as a law enforcement officer, it follows that § 41-4-12 of the NMTCA waives immunity for the Village Administrator's acts to deprive their rights secured by the Constitution. *Id*. The Court is not persuaded.

Neither party points to any authority for their position concerning the Village Administrator's characterization as a law enforcement officer. Because "New Mexico courts have construed this definition strictly[,]" *Lymon v. Aramark Corp*., 728 F. Supp. 2d 1222, 1255 (D.N.M. 2010) (quotation omitted), the lack of cited authority favors the Village. Moreover, the Court's own research reveals analogous case law supporting a determination that the Village

Administrator does not fall within the reach of § 41-4-12's definition of a law enforcement officer. *See, e.g.*, *Montes v. Gallegos*, 812 F. Supp. 1165 (D.N.M. 1992) (holding that a mayor is not a law enforcement officer under the NMTCA notwithstanding his authority and obligation to exercise law enforcement functions); *Anchondo v. N.M. Corr. Dep't*, 666 P.2d 1255 (N.M. 1983) (concluding that because corrections officials' primary duties and responsibilities were administrative and did not involve the "traditional duties" of law enforcement officers, they did not fall within § 41-4-12's definition). Thus, the Court finds that Plaintiffs' state constitutional claims fail not only because they are asserted outside of the applicable statute of limitations, *see supra* Part IV.B., but also because there is no applicable waiver of immunity under the NMTCA. To the extent Plaintiffs' claims are based on state constitutional violations, they must be dismissed.

### D.  Procedural Due Process Claims

The Village contends that Plaintiffs' failure to pursue certain state remedies was "fatal" to their due process claims. Doc. 28 at 7. Specifically, the Village observes that the New Mexico Constitution authorizes a state district court to review the denial of Plaintiffs' appeals. *Id*. at 6 (citing New Mexico Constitution, art. VI, § 13). Relatedly, the Village notes that Civil Rule of Procedure for District Courts 1-075 provides that an "aggrieved party may seek review of a final decision or order" of a local government entity. NMRA 1-075. Because Plaintiffs failed to avail themselves of the process outlined in Rule 1-075 and the opportunity for judicial review, the Village maintains that their procedural due process claims are not ripe. Doc. 28 at 7.

In so arguing, the Village relies upon a decision from the Southern District of Illinois: *Trustees of Marion Kingdom Hall of Jehovah's Witnesses v. City of Marion*, 638 F. Supp. 2d 962 (S.D. Ill. 2007). *See* Doc. 28 at 6. Acknowledging that there is generally no requirement for a

plaintiff to exhaust administrative remedies before asserting a § 1983 claim, the court in *Trustees of Marion Kingdom Hall* discussed an exception, holding that "in the context of constitutional challenges to local land use regulation, the ripeness doctrine imposes on litigants a duty to pursue state remedies before seeking recourse to federal court." 638 F. Supp. 2d at 968 (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)).

In *Williamson County*, the case upon which the Southern District of Illinois relied, the Supreme Court held that a plaintiff must demonstrate that he has received a "final decision regarding the application of the [challenged] regulations to the property at issue" from "the government entity charged with implementing the regulations" and has sought "compensation through the procedures the State has provided for doing so." *Id*. (quoting *Williamson Cnty.*, 473 U.S. at 186)). In *Trustees of Marion Kingdom Hall*, in turn, the court admonished the claimant for "let[ting] the time for seeking a state remedy pass without doing anything to obtain it." *Id*. at 976. Here, the Village insists that, like the claimant in *Trustees of Marion Kingdom Hall*, Plaintiffs had an available state remedy in Rule 1-075, which they elected not to pursue. Doc. 28 at 6-7.

But, as Plaintiffs are quick to point out, more recent United States Supreme Court case law undermines the court's rationale in *Trustees of Marion Kingdom Hall*. Doc. 36 at 10 (citing *Knick v. Township of Scott, Penn.*, 139 S. Ct. 2162, 2179 (2019)). Expressly overruling *Williamson County*, the Supreme Court determined in *Knick* that the state-litigation requirement it had imposed in the context of land-use disputes was poorly reasoned and unjustifiably burdensome. *Knick*, 139 S. Ct. at 2167-70. The Supreme Court explained: "The Civil Rights Act of 1871, after all, guarantees 'a federal forum for claims of unconstitutional treatment at the

hands of state officials,' and the settled rule is that 'exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983.'" *Id*. at 2167 (citing *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)).

Drawing upon the rationale in *Knick*, Plaintiffs accuse the Village of relying on outdated case law and insist that the "settled rule" is that the failure to exhaust state remedies does not preclude a constitutional claim under § 1983. Doc. 36 at 10 (citing *Patsy*, 457 U.S. at 516). Plaintiffs contend that once a local government entity renders its final decision, due process and equal protection claims premised upon those decisions are ripe. Doc. 36 at 10 (citing *McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir. 1997)). Plaintiffs offer the more accurate review of the law. Ultimately, the Court agrees that Plaintiffs were not required to exhaust their rights under Rule 1-075 as a precondition to asserting their federal due process rights pursuant to 42 U.S.C. § 1983. *See Knick*, 139 S. Ct. at 2167; *see also Pakdel v. City and Cnty. of San Francisco, Calif.*, 141 S. Ct. 2228, 2228 (2021) (holding that the plaintiffs were not required to show that they complied with the city's administrative procedures for seeking relief before making a constitutional claim under 42 U.S.C. §1983).

Unsurprisingly, a shift in the Village's position on the issue of ripeness is evident in its reply brief. *See* Doc. 39. While the Village insists therein that Plaintiffs received constitutionally-adequate process,[11] it no longer takes the position that the doctrine of ripeness imposed upon them a duty to pursue state remedies before asserting due process claims in federal court. *See id*. at 6-9. In an apparent attempt to recast its arguments to conform with more recent Supreme Court case law, the Village suggests that "[t]he issue is not whether the Plaintiffs availed

---

[11] In their initial brief, the Village makes the conclusory statement that "Plaintiff[s] had been given and had available to them all of the process to which they were due." Doc. 28 at 5. It did not, however develop any argument related to process provided by the Village and focused instead on Plaintiffs' failure to pursue a remedy under Rule 1-075. *See id*.

themselves of th[e] process, but whether the process was sufficient to satisfy the Due Process clause." *Id*. at 7; *but see* Doc. 28 at 6-7 (asserting in its initial brief that "Plaintiffs' failure to pursue [judicial review under Rule 1-075] is fatal to both Plaintiffs' procedural and substantive due process claims"). The process afforded Plaintiffs, argues the Village in its reply brief, "was more than sufficient." Doc. 39 at 7. For instance, the Village contends that Plaintiffs were provided (1) notice by virtue of their proximity to the subject building project; (2) an appellate process under which Village officials considered and denied Plaintiffs' appeals; and (3) a post-deprivation process, under Rule 1-075, that Plaintiffs opted not to pursue. *Id*.

To summarize, the Village initially suggests that Plaintiffs' failure to pursue state remedies means their due process claims were not ripe. *See* Doc. 28 at 5-7. Then, after Plaintiffs demonstrate that the Village's legal position was undermined by more recent Supreme Court precedent, the Village crafts new arguments as to why Plaintiffs received all the process they were due. *See* Doc. 39.

But these are not the only arguments raised for the first time in the Village's reply brief. The Village also advanced an entirely new alternative legal theory: that Plaintiffs' claimed property interest is not entitled to due process protections. *Id*. at 8 (citing *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *Stein v. Disciplinary Bd. of Supreme Court of N.M.*, 520 F.3d 1183 (10th Cir. 2008)). There is significant appeal to the Village's newly-advanced argument that Plaintiffs have not alleged a protected property interest. *See, e.g., Zia Shadows, L.L.C. v. Las Cruces*, 829 F.3d 1232 (10th Cir. 2016) (explaining that the plaintiff failed to show a constitutionally protected property interest in a favorable land-use decision by the city, where it could not show that the city lacked discretion to deny the land-use permit). The problem for the Village is that courts generally do not consider new legal arguments raised for

the first time in a reply brief. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10 Cir. 2003) (reasoning that a trial court abuses its discretion if it considers new legal arguments raised for the first time in a reply brief after denying a request for surreply); *see also* Fed. R. Civ. P. 7(b)(1)(B), (C) (requiring motions to state "with particularity the grounds" that the movant is relying on for relief as well as the relief sought). In this case, the Court is reluctant to consider arguments not presented in the Village's initial motion, as doing so has prevented Plaintiffs from responding and deprived the Court of the benefit of full briefing. *See Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch.*, Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 5231709, at *5 (D.N.M. Aug. 24, 2007) (citing *Doctor John's Inc. v. City of Roy*, No. 03cv00081, 2007 WL 1302757, at *4 (D. Utah May 7, 2007)).

At this stage, the Court is unwilling to grant the Village's motion on the grounds articulated in its reply brief without the benefit of full briefing on the new arguments and legal theories raised therein. Acknowledging that the Village has raised potentially viable arguments in its reply brief, the Court will grant Plaintiffs an opportunity to file a surreply to respond to these newly-presented procedural due process arguments.[12] In their surreply, Plaintiffs should address two narrow issues: (1) whether the process they were afforded, including the appeals process and any post-deprivation process, was constitutionally adequate; and (2) whether they have asserted a property interest entitled to due process protection. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). The Court will reserve ruling on Plaintiffs' procedural due process claim until Plaintiffs have either filed a surreply or indicated an intent not to do so.

---

[12] Although Plaintiffs did not request a surreply to address issues raised for the first time in the Village's reply brief, they did request oral argument, *see* Doc. 36 at 16, which could serve the same purpose. In this case, the Court prefers a limited surreply on the issues outlined herein in lieu of oral argument.

### E.  Substantive Due Process Claims

Generally, to establish a substantive due process claim, a plaintiff must demonstrate that a decision was "arbitrary and capricious." *Crider v. Bd. of Cnty. Comm'rs of the Cnty. of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001). The Village maintains that, here, "[t]he stated, articulated and considered basis for [its] determinations with respect to the three separate appeals was well-reasoned and, as a matter of law, cannot be considered arbitrary and capricious." Doc. 39 at 9. In support, it points to two letters that it contends demonstrate a rational basis for denying Plaintiffs' appeals. *Id*. First, it points to Mr. Garcia's January 2, 2019 letter, which it submits "clearly set forth the basis for its determination that the First and Second Appeal were untimely and/or that Plaintiffs failed to enter the appeal fee." *Id*. Additionally, the Village refers to the Village Administrator's January 24, 2019 letter, which it suggests also offered reasons that were neither arbitrary nor capricious for denying Plaintiffs' third appeal. *Id*. Together, the Village contends, these letters "establish on their face the rational basis for Corrales' decision with regard to the appeals." Doc. 28 at 7-8. Further, the Village submits that "Plaintiffs have not pled, nor can they come forward with any evidence, controverting that rational basis." *Id*. at 8.

Plaintiffs, though, insist that the reasons offered by the Village for denying their appeals, and more specifically their requests for a hearing, *were* arbitrary and capricious. Doc. 36 at 11. They emphasize that the applicable provisions in the Village Code, §§ 8-34 and 18-49, provide the right to a hearing. *Id*. at 11. By denying their hearing requests on the basis that their appeals were untimely and not accompanied by an appeal fee, Plaintiffs assert that the Village effectively violated their substantive due process rights. *Id*. (citing *Jacobs, Visconti & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1119 (10th Cir. 1991)). Plaintiffs challenge the Village's practices – both their general practices and their practices and decisions in this case. *See* Doc. 36 at 11-12.

They note, for instance, that the Village does not publish the issuance of building permits or certificates of occupancy. *Id*. at 11 (citing Doc. 36-1 ¶ 22). As such, they submit that requiring anyone other than an applicant to appeal within twenty days after issuance of the building permit, as the Village Code purports to do, is "on its face arbitrary and capricious." *Id*.

Plaintiffs also allege that, in this case in particular, the Yost defendants failed to post the building permit at the construction site, *see* Doc. 3-56 ¶ 14, and the Village did not provide copies of any documents related to the Yost defendants' building project until Plaintiffs filed formal IPRA requests in August 2018 and September 2018, *see* Doc. 36 at 11 (citing Doc. 36-1 ¶¶ 10-13). Even when the Village provided documents in response to their IPRA requests, Plaintiffs allege that it failed to produce the certificate of occupancy until December 28, 2018, which was *21 days after* its issuance. *Id*. (citing Doc. 36-2 ¶ 7). In Plaintiffs' view, "[t]he Village's delay in providing the Certificate of Occupancy at issue until the day after the appeal period had expired and then denying the Plaintiffs' appeal on this basis [was] arbitrary and capricious and shows a lack of rational relationship to any exercise of the Vilalge's [sic] police power." *Id*. at 11-12.

Similarly, Plaintiffs point out that the Village did not specify an appeal fee. Doc. 36 at 12 (citing Docs. 36-1 ¶¶17-18; 36-2 ¶ 9). They submit an affidavit from Plaintiff Staley in which she indicates that Plaintiffs were ready, willing, and able to pay the appeal fee at the time they filed their appeal. Doc. 36-1 ¶ 18. Plaintiff Staley avers that when Plaintiffs delivered their first and second appeals to the Village, the secretary accepted them but advised that she did not know the amount of the appeal fee. *Id*. According to Plaintiff Staley, the Village secretary assured her that someone from the Village would contact her regarding the amount of the fee if there was one, but no one ever contacted her. *Id*. Under these circumstances, Plaintiffs submit that the

Village's denial of their appeals on the basis of an unpaid appeals fee was arbitrary and capricious.

In terms of legal authority, Plaintiffs rely on *Jacobs, Visconti & Jacobs* to support their position that "if the Village's two reasons for denying a hearing are arbitrary and capricious, then the Village has violated the Plaintiffs' substantive due process rights." Doc. 36 at 11 (citing *Jacobs, Visconti & Jacobs*, 927 F.2d at 1119). The Court is not convinced, however, that the Tenth Circuit's rationale in *Jacobs, Visconti & Jacobs* is wholly supportive of Plaintiffs' arguments here.

In *Jacobs*, a developer and landowners sought to rezone a parcel of land for the purpose of developing a shopping mall. 927 F.2d at 1114. The city, however, denied their application for rezoning. *Id*. at 1114-15. The developer and landowners sued the city in federal district court. *Id*. at 1115. Relevant to Plaintiffs' claims here, the district court dismissed the procedural and substantive due process claims, concluding that the rezoning application did not present a property interest sufficient to trigger due process protection. *Id*. The Tenth Circuit agreed with the lower court that state law requiring zoning decisions to be "reasonable" did not confer upon the developer and landowners a "legitimate claim of entitlement." *Id*. at 1116. In so holding, the Tenth Circuit observed that "zoning bodies generally are granted wide discretion in their zoning decisions . . . ." *Id*. (citing *Combined Inv. Co. v. Bd. of Butler Cnty. Comm'rs*, 605 P.2d 533, 543 (Kan. 1980)). Moreover, the court reasoned that "the mere existence of an entitlement to a hearing under state law, without further substantive limitation," fails to give rise to an independent property interest. *Id*. at 1117 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Hewitt v. Helms*, 459 U.S. 460, 471 (1983)). The court cautioned that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a

legitimate claim of entitlement." *Id.* at 1118 (citing *Olim*, 461 U.S. at 250). As with Plaintiffs'
procedural due process claims, this begs the question whether Plaintiffs have asserted a property
interest for which substantive due process rights have been triggered.

The Village offers little in response to Plaintiffs' arguments, other than conclusory
statements that the reasons articulated in the January 2019 letters – that the appeals were
untimely and not accompanied by an appeal fee – were "reasonable" and "obviously not arbitrary
and capricious." Doc. 39 at 9. The Village does not discuss the Tenth Circuit's analysis of the
due process claims in *Jacobs* despite Plaintiffs' reliance on that case in their response brief. Nor
does the Village directly assert in the context of Plaintiffs' substantive due process claim that
Plaintiffs lack a protected property interest.

As explained above, though, the Court has reserved ruling on the issue of whether
Plaintiffs have asserted a property interest entitled to due process protection. *See supra* Part
VI.D. Because the Court's resolution of this issue has implications for Plaintiffs' substantive due
process claim, just as it does for their procedural due process claim, the Court will likewise
reserve ruling on Plaintiffs' substantive due process claim to allow Plaintiffs to file a surreply.

### F.  Equal Protection/Class of One Claim

Plaintiffs' equal protection claim is premised upon the Village's refusal to consider their
three appeals. *See* Doc. 3-56 at 118. Plaintiffs do not allege that they are part of an identifiable
group. *See id.* The Supreme Court, however, has recognized equal protection claims brought by a
class of one where plaintiffs allege they have been "intentionally treated differently from others
similarly situated and . . . there is no rational basis for the difference in treatment." *Vill. of
Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To establish such a claim, Plaintiffs must
demonstrate that "the action taken by the [Village] . . . was a spiteful effort to 'get' [them] for

reasons wholly unrelated to any legitimate [government] objective." *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001), *overruled on other grounds by Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213 (10th Cir. 2008) (citing *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)). As the Village observes, "[s]uch claims are difficult to prove, as the plaintiff bears a 'substantial burden' to show that 'others similarly situated in all material respects were treated differently and that there is no objectively reasonable basis for the defendant's action.'" Doc. 28 at 8-9 (quoting *Zia Shadows*, 829 F.3d at 1239). According to the Tenth Circuit, a class-of-one plaintiff must show "a specific and detailed account of the nature of the preferred treatment of the favored class." *Zia Shadows*, 829 F.3d at 1239-40 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004)).

Here, the Village maintains that Plaintiffs' equal protection claims are subject to dismissal for two reasons: (1) Plaintiffs' appeals *were* considered, as demonstrated in the January 2, 2019 and January 24, 2019 letters; and (2) Plaintiffs have not stated a claim that they were treated dissimilarly from others who were similarly situated. Doc. 28 at 8. Plaintiffs focus on the Village's second argument, pointing to the following facts and evidence, which they contend show that they *were* treated differently from similarly situated Village residents: (1) that Plaintiffs were denied a hearing regarding the legality of the Yost defendants' construction project despite an initial indication from Village officials that the construction was illegal (Doc. 36 at 14 (citing Doc. 36-1 ¶ 30)); (2) that Plaintiffs provided the Village Administrator a copy of a letter from the prior Village Attorney in which he opined that a second dwelling proposed by a different resident was illegal (Doc. 36 at 14 (citing Doc. 36-1 ¶ 30)); (3) that the Village Planning and Zoning Administrator described the "one dwelling unit per lot" policy as a "backbone provision in the Village since 1972" in her July 21, 2021 letter (Doc. 36 at 14 (citing

Doc. 36-1 ¶¶ 29-30; 36-1.2)); (4) that Plaintiff Staley "was subsequently removed from her positions as Chairman of the Village Planning and Zoning Commission and as the Alternate Village Judge" (Doc. 36 at 14 (citing Docs. 3-56 ¶ 32; 36-1 ¶¶ 31-32)).

Plaintiffs submit that these facts demonstrate "personal animosity" against Plaintiff Staley by the Village Administrator and Mayor as well as the lack of a rational basis for the denial of a hearing on their appeals. Doc. 36 at 14 (citing *Mimics v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005)). The Court disagrees. To the contrary, Plaintiffs have failed to demonstrate the preferred treatment of similarly situated appellants. They have not, for instance, shown that the appeals of other Village residents were considered by the Village, or favorably resolved, when they were filed more than 20 days after a permitting decision or without an accompanying filing fee. Nor have Plaintiffs shown that in this case the Village refused to consider the merits of their appeals for a reason unrelated to a government objective. Rather, the evidence suggests that the Village denied their appeals because they were outside the appeal period defined by the Village Code and unaccompanied by a filing fee. *See, e.g.*, Docs. 28-B; 38-C. That Plaintiff Staley was subsequently removed from positions with the Village does not necessarily bear upon the issue of whether there was a rational basis for denying Plaintiffs' appeals as untimely and unsupported by an appeals fee. Plaintiffs have failed to meet their burden to come forward with evidence of differential treatment in materially similarly situations, and the Court will grant the Village's motion for summary judgment as to this ground.

### G.  Writ of Mandamus Request

Plaintiffs seeks a writ of mandamus from the Court to compel the Village to accept and consider their appeals in accordance with the Village Code provisions. Doc. 3-56 ¶¶ 95-109. "Mandamus lies to compel the performance of a ministerial duty that one charged with its performance has refused to perform." *Concerned Residents for Neighborhood Inc. v. Shollenbarger*, 831 P.2d 603, 605 (N.M. Ct. App. 1991) (citing *State ex rel. Reynolds v. Bd. of Cnty. Comm'rs*, 376 P.2d 976 (N.M. 1962)). Here, Plaintiffs observe that § 18-49 of the Village Code provides that those aggrieved by decisions of the Planning and Zoning Commission may appeal to the Village's Governing Body, which decides appeals following a hearing. Doc. 3-56 ¶¶ 102-03. It is undisputed that no hearing took place in this case. Plaintiffs contend that considering their appeals and granting a hearing were ministerial acts that the Village should now be compelled to perform. *Id*. ¶¶ 97-98. They further allege they are "beneficially interested" because their own property "is experiencing significant property damage due to the construction of the Second Stand Alone Dwelling/Casita." *Id*. ¶ 106.

Critically, New Mexico law specifies that government actions cannot be compelled through mandamus when "there is a plain, speedy, and adequate remedy in the ordinary course of law." N.M. Stat. Ann. 1978, § 44-2-5. Plaintiffs contend that they were without such a remedy. The Village maintains otherwise. More specifically, the Village argues that NMRA 1-075 provided a plain, speedy, and adequate remedy, though Plaintiffs chose not to pursue it. Doc. 28 at 9. It is on the question of an adequate remedy that Plaintiffs' Writ of Mandamus request hinges.

Rule 1-075 "provides for constitutional review of administrative decisions and orders by a district court." *Flores v. City of Farmington*, No. 18-cv-4092 WJ/JFR, 2019 WL 4860898 (D.N.M. Oct. 2, 2019). The rule specifies that "[a]n aggrieved party may seek review of a final

decision or order of an agency" by "filing a petition for writ of certiorari in the district court."
NMRA 1978, 1-075(B). Plaintiffs insist that "[b]efore an appeal under Rule 1-075 could be filed,
the Village had to hold the hearing concerning the illegality of the [Yost defendants'] Casita."
Doc. 36 at 15. In other words, absent a hearing and decision on the merits of their appeals,
Plaintiffs suggest they had no recourse under Rule 1-075. Doc. 36 at 15. Plaintiffs do not further
develop this argument, and the Village maintains that "[n]either Rule 1-075 NMRA [n]or the
cases dealing with it suggest that such a limitation applies." Doc. 39 at 10. The Village observes
that Rule 1-075 offers a district court an array of options to include remand for further
proceedings. *Id*.

The Village has the better of the arguments in this regard. The Court agrees that the
preconditions Plaintiffs assign to Rule 1-075 are not supported by the language of the rule or by
case law. There is nothing to suggest that Plaintiffs were foreclosed from using Rule 1-075 to
seek judicial review of the Village's administrative decisions in this case simply because they
were never granted a hearing on the merits of their appeals.

Moreover, the availability of Rule 1-075 undermines Plaintiffs' request for a writ of
mandamus. *See Wallbro v. Nolte*, 511 P.3d 348 (N.M. Ct. App. 2021) (noting that "legal
avenues" other than mandamus, such as under Rule 1-075, exist for purposes of challenging
administration decisions as "arbitrary, an abuse of discretion, or unsupported by substantial
evidence"); *see also Shollenbarger*, 831 P.2d at 607 (determining that writ of certiorari was an
adequate remedy at law for challenging an administrative decision). Because Plaintiffs have not
pointed to law or evidence demonstrating they were without a "plain, speedy, and adequate
remedy in the ordinary course of law," their request for a writ of mandamus must fail. The Court
will grant the Village's motion as to this claim.

## V.     CONCLUSION

After granting in part the Village's motion, only Plaintiffs' Procedural Due Process and Substantive Due Process claims asserted under the U.S. Constitution (Count X) remain. The Court has reserved ruling on these claims so that Plaintiffs may file a limited surreply to address legal arguments advanced for the first time in the Village's reply brief.

**THEREFORE**,

**IT IS HEREBY ORDERED** that the Village of Corrales' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 28) is **GRANTED IN PART** as described in this Opinion;

**IT IS FURTHER ORDERED** that Plaintiffs may file a surreply within 14 days of entry of this Order addressing: (1) whether the process they were afforded, including the appeals process and any post-deprivation process, was constitutionally adequate; and (2) whether they have asserted a property interest entitled to due process protection;

**IT IS FURTHER ORDERED** that Plaintiffs' claims asserted under the New Mexico Constitution, their Equal Protection claim, and their request for a Writ of Mandamus will be **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**