IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELIZABETH STALEY, *Individually and as Personal Representative of the Estate of James G. Belshaw, deceased*,

    Plaintiff,

v.                                                Case No. 1:22-cv-324 KRS/JFR

CRAIG A. YOST, LISA A. YOST,
MARTHANNE REINHARD, and
VILLAGE OF CORRALES,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the remaining claims in Defendant Village of Corrales's Motion to Dismiss or in the Alternative for Summary Judgment, (Doc. 28). Plaintiff asserts various claims against adjacent property owners, Craig and Lisa Yost and Marthanne Reinhard ("the Yost defendants") as well as the Village of Corrales ("the Village").[1] On December 22, 2022, the Court entered a Memorandum Opinion and Order granting in part the Village's Motion to Dismiss or in the Alternative for Summary Judgment, (Doc. 28), and dismissing Plaintiff's claims asserted under the New Mexico Constitution and the federal Equal Protection clause, as well as Plaintiff's request for a Writ of Mandamus. (Doc. 59). The Court reserved ruling on Plaintiff's Procedural Due Process and Substantive Due Process claims asserted under the United States Constitution (Count X), and allowed Plaintiff to file a limited surreply to address two issues: (1) whether the process Plaintiff was afforded, including the

---

[1] Plaintiffs Elizabeth Staley and James G. Belshaw initially filed this action as co-owners and residents at 627 Sagebrush Drive. (Doc. 3-56) at 1. Mr. Belshaw passed away on October 15, 2022, and Ms. Staley now proceeds in this case individually and as the personal representative of Mr. Belshaw's estate. *See* (Docs. 45, 90).

appeals process and any post-deprivation process, was constitutionally adequate; and (2) whether Plaintiff has a property interest entitled to due process protection. (Doc. 59) at 33. Plaintiff filed her surreply on January 5, 2023, and pursuant to the Court's Order for additional briefing, the Village filed a response to the surreply on February 10, 2023. (Docs. 67, 77, and 87). With the consent of the parties to conduct dispositive proceedings pursuant to 28 U.S.C. § 636(c), and having considered the parties' submissions, the applicable law, and the record of the case, the Court grants Defendant Village of Corrales' Motion to Dismiss or for Summary Judgment as to the remaining due process claims as set forth below.

## I. BACKGROUND[2]

The Court restates here the facts from its previous Memorandum Opinion and Order that are relevant to the remaining due process claims. Plaintiff asserts that in 2018, the Village violated the Village Code by issuing a building permit for a structure on property owned by the Yost defendants at 153 Silva Court, which is situated adjacent to property owned and occupied by Plaintiff at 627 Sagebrush Drive, within the Village of Corrales. A Village ordinance, followed since 1972, allows "one dwelling unit per one lot." (Doc. 36) at 4, Additional Fact ("AF") ¶ D (citing Doc. 36 at 22-23, 25-30).[3] The Yost defendants obtained this building permit

---

[2] The Court recites all factual allegations in a light most favorable to Plaintiff as the non-moving party, with all reasonable inferences from the record drawn in her favor. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1189 (10th Cir. 2000).

[3] The Village disputes Plaintiff's statement of fact concerning the Village's "one dwelling unit per one lot" ordinance, arguing that the ordinance is "not material to the issues" and that it merely reflects Plaintiff Staley's interpretation of the ordinance. Doc. 39 at 3. The Village emphasizes that "Plaintiffs do not speak for the Village." *Id*. But even putting aside Plaintiff Staley's affidavit, a July 21, 2021 letter from Laurie Stout, then-Planning and Zoning Administrator for the Village of Corrales, to homeowners Ken and Kathleen Dehoff explains that the Village ordinance permitting only "one dwelling unit per one lot" was "a backbone provision in the Village since 1972." *See* (Doc. 36) at 29-30. According to Ms. Stout's letter, the ordinance was amended in June 2021 to clarify the definition of "dwelling unit" as a single unit with rooms for "living, sleeping, eating, cooking and sanitation," which are "part of the same contiguous heated space[] and are accessible through the same door." *Id.* at 29. Notably, the Village does not dispute the authenticity of Ms. Stout's July 21, 2021 letter. *See* (Doc. 39).

on May 29, 2018.  *Id*. at ¶ 11.  In their application for the permit, the Yost defendants omitted the "work description."  (Doc. 3-56) at ¶ 12; *see also* (Doc. 36) at 41.  The permit identified the permit type as a "Res[idential] Addition" and the project as a "workshop."  (Doc. 3-56) at ¶ 12; (Doc. 36) at 40.  Two days after the permit was approved, on May 31, 2018, the Yost defendants submitted building plans to the Village.  (Doc. 3-56) at ¶ 13.  The plans depict a dwelling unattached to the existing residence with areas designated for a bedroom, living room, laundry room, storage closets, dressing lounge, and covered patios and porches.  *Id*.  Additionally, the plans show a second space with the hand-written label: "dining."  *Id*.; (Doc. 36) at 44.  This second "dining" area includes a pantry, countertops, cabinets, a refrigerator, dishwasher, and utility hook-ups.  (Doc. 3-56) at ¶ 13; (Doc. 36) at 44.

Following the issuance of the building permit, construction began on the Yost defendants' structure in July 2018.  (Doc. 3-56) at ¶ 14.  The Yost defendants did not post the building permit when construction commenced.  *Id*.  Plaintiff contacted the Village on July 28, 2018, to inquire about the legality of the Yost defendants' construction project.  *Id*. ¶ 15.  Specifically, Plaintiff Staley emailed Corrales Community Development Coordinator Laurie Stout to advise her that a second stand-alone dwelling was being constructed at 153 Silva Court.  *Id*.  Plaintiff Staley also notified Planning and Zoning Administrator/Village Administrator Suanne Derr, who indicated that she would follow up with Plaintiff Staley's concern.  *Id*.

On July 30, 2018, Ms. Stout sent an e-mail to Plaintiff Staley, suggesting that if the Yost defendants' construction project "turns into something other than a workshop, [the Village] can shut that down."  *Id*. ¶ 16.  After Ms. Stout informed Plaintiff Staley that Village Building Inspector Lee Brammeier was permitting the Yost defendants' construction of the structure to continue, Plaintiffs again raised objections with Ms. Derr.  *Id*. ¶¶ 17-18.

On August 24, 2018, Ms. Derr held a meeting with Mr. Brammeier, Ms. Stout, and Plaintiff to discuss the Yost defendants' construction project, to review the relevant Village ordinances, and to provide an official determination regarding the project. *Id*. ¶ 18. At that meeting, Plaintiff briefly observed a small portion of the Yost defendants' building plans and noted that they depicted a second stand-alone dwelling instead of a "workshop." *Id*. However, at that time Plaintiff did not have in her possession any documents related to the Yost defendants' construction project. *Id*. Also on August 24, 2018, Mr. Brammeier updated the electronic building permit and inspection detail list to identify the Yost defendants' construction project as an "accessory structure." *Id*. ¶ 19; (Doc. 36) at 45. Mr. Brammeier explained that he "changed [the] project from workshop [to accessory structure] to better reflect plans." (Doc. 3-56) at ¶ 19. That same day, Plaintiff filed an Inspection of Public Records Act ("IPRA") request in an attempt to obtain information about the Yost defendants' construction project. *Id*. ¶ 20.

On August 26, 2018, Ms. Derr explained in a follow-up e-mail to Plaintiff Staley that the Yost defendants' project began under the "former building official" but that the "current building official" had continued the inspection process and "found no reason to stop construction." (Doc. 28-2) at 4. Ms. Derr went on to explain that "[a]ccessory buildings" have always been allowed pursuant to the Village's ordinances and that upon consultation with the Village attorney, per Plaintiff Staley's request, the attorney agreed that accessory buildings were not prohibited. *Id*. Above the body of Ms. Derr's e-mail message to Plaintiff Staley is the following note: "This is what I had sent to Liz after the meeting on the 24th. I'm not sure I made a decision, but we can include this in the timeline. Suanne." *Id*.

On August 29, 2018, the Village provided responsive documents to Plaintiff, including 21 pages of drawings, a permit application and permit, and five pages of building plans. (Doc. 3-

4

56) at ¶ 21  On September 4, 2018, Plaintiff filed a second IPRA request to verify that the Village had provided all relevant documents related to the Yost defendants' construction project. *Id.* at ¶ 22.  The Village did not respond to Plaintiff's second IPRA request until late December 2018, after Plaintiff retained legal counsel.  *Id.*

On September 14, 2018, Plaintiff filed a written appeal of the Village building inspectors' decision to issue a building permit for 153 Silva Court and the Village's failure to stop construction of the Yost defendants' project.  (Doc. 3-56) at ¶ 24; (Doc. 28) at Undisputed Fact ("UF") ¶ 4.  Three days later, on September 17, 2018, Plaintiff filed a second written appeal of the Village Administrator's decision not to stop construction at 153 Silva Court.  (Doc. 3-56) at ¶¶ 2, 5; (Doc. 28) at UF ¶ 5.  In the second appeal, Plaintiff asked the Village to stop construction until its governing body could determine, at a public hearing, the legality of the project.  (Doc. 3-56) at ¶ 26 .  No public hearings were scheduled concerning Plaintiff's first or second appeals.  *Id*. at ¶ 27.

The Yost defendants' construction project appeared complete sometime in late November or early December 2018.  (Doc. 3-56) at ¶ 29.  On December 7, 2018, the Village issued a Certificate of Occupancy to the Yost defendants for their "accessory building."  *Id.*; *see also* (Doc. 28) at UF ¶ 6.  The Village produced the Certificate of Occupancy to Plaintiff on December 28, 2018, in response to her earlier IPRA request.  (Doc. 36-2) at ¶ 7.

On January 2, 2019, the Village's attorney sent a letter to Plaintiff's attorney, attempting to "address[ Plaintiff's] allegations" and to explain why Plaintiffs "were not entitled to a public hearing on their attempted appeals."  *See* (Doc. 28-2) at 1-3.  Specifically, the Village's attorney indicated that because the Yost defendants' building permit was issued on May 29, 2018, Plaintiff's September 14, 2018 appeal was outside of the 20-day appeal period.  *Id*. at 3.  With

regard to Plaintiff's September 18, 2018 letter, which purported to appeal an August 14, 2018 action by the Village, the Village attorney explained that "Village records regarding this matter do not reflect any 'action' taken by the Village's building official on August 14, 2018." *Id*. Even if Village officials had taken some relevant action on August 14, 2018, the Village attorney observed that September 14, 2018, was more than 20 days after the date of the alleged action. *Id*. Because the Village attorney found no Village decision regarding the Yost defendants' construction project "prior to the 20-day deadline of the Sept. 14 Letter or the Sept. 18 Letter," he indicated that "there was no decision subject to appeal." *Id*. Additionally, the Village attorney explained that Plaintiff failed to perfect any appeal, as "[t]he Village's records [did] not reflect that [Plaintiff] ever paid the applicable filing fee to take either of their attempted appeals." *Id*.

On January 10, 2019, Plaintiff filed a third appeal. (Doc. 28) at UF ¶¶ 6, 8; (Doc. 36) at 36-38. Plaintiff filed the third appeal within 20 days of receiving a copy of the previously-issued Certificate of Occupancy from the Village. (Doc. 36) at 36-38. On January 17, 2019, Plaintiff's counsel sent a letter to the Village's attorney noting that Plaintiff had, on September 14, 2018, and September 17, 2018, requested a public hearing pursuant to §§ 8-24 and 18-49 of the Village of Corrales Code of Ordinances and, yet, no hearing had been provided. (Doc. 36) at 52-55.

On January 24, 2019, the Village Administrator sent a letter to Plaintiff's counsel in response to Plaintiff's third appeal. (Doc. 28-3). In that letter, the Village Administrator concluded that Plaintiffs "do not meet the requirements for an appeal of the decision by the building inspector[,]" as they were "not aggrieved persons for the Certificate" and because "the January 10, 201[9][4] appeal was not filed within the 20-day time frame for appeals." *Id*. at 2.

---

[4] The Village Administrator references a "January 10, 2018 appeal;" however, it is clear from the letter's context that she was referring to the appeal filed on January 10, 2019. *See* (Doc. 28-3) at 2.

Accordingly, the Village Administrator determined that the "appeal made by [Plaintiff] dated January 10, 2019, must be denied." *Id.*; Docs. 36 at 3, 36-2 ¶¶ 10-15; 3-56 ¶¶ 33-35. Plaintiff did not seek review by petition for writ of certiorari of any of the Village's decisions on her appeals under Rule 1-075 NMRA. (Doc. 28) at UF ¶ 9 (citing Doc. 28-4).

On March 28, 2022, Plaintiff filed an Amended Complaint in the Thirteenth Judicial District, County of Sandoval, State of New Mexico. (Doc. 3-56). In that Complaint, Plaintiff brings the following claims against the Yost defendants:

Count I: Trespass and Damages Due to Improper Diversion of Water. (Doc. 3-56) at 11-13.

Count II: Private Nuisance. *Id.* at 13-14.

Count III: Breach of Village of Corrales's Code of Ordinances. *Id.* at 14-15.

Count IV: Invasion of Privacy by Intrusion. *Id.* at 15-16.

Count V: Malicious Abuse of Process. *Id.* at 16-17.

Count VI: Harassment. *Id.* at 17-18.

Count VII: Injunctive Relief to Disassemble and Remove the Casita. *Id.* at 18-20.

Count VIII: Injunctive Relief to Remove the Surveillance Cameras. *Id.* at 20-21.

Plaintiff also brings the following claims against the Village:

Count IX: Writ of Mandamus. *Id.* at 21-22.

Count X: Procedural and Substantive Due Process claims under the New Mexico Constitution and the United States Constitution. *Id.* at 22-23.

Count XI: Equal Protection claims under New Mexico Constitution and the United States Constitution. *Id.* at 23-24.

The Village removed the case to this Court on April 28, 2022. (Doc. 1). On December 22, 2022, the Court entered a Memorandum Opinion and Order on the Village's

Motion to Dismiss or for Summary Judgment, ruling that: (1) Plaintiff's federal constitutional claims are not barred by the applicable statute of limitations; (2) Plaintiff's claims under the New Mexico Constitution are barred by the applicable statute of limitations; (3) there is no valid waiver of immunity under the New Mexico Tort Claims Act for Plaintiff's state constitutional claims; (4) the Village is entitled to summary judgment on Plaintiff's federal equal protection claim; and (5) Plaintiff's request for a writ of mandamus fails. (Doc. 59) at 10-32.[5]

Regarding Plaintiff's remaining federal due process claims, the Court noted that the Village raised arguments in its reply brief that were not developed in its Motion to Dismiss or for Summary Judgment. These arguments were that Plaintiff received sufficient due process and, regardless, Plaintiff's claimed property interest is not entitled to federal due process protections. (Doc. 59) at 22-23. Since these arguments were first developed in the Village's reply brief, the Court reserved ruling on Plaintiff's federal due process claims and ordered additional briefing addressing: (1) whether the process Plaintiff was afforded was constitutionally adequate, and (2) whether Plaintiff has asserted a property interest entitled to due process protection. *Id.* at 33. Those claims are now ready for ruling and are the subject of this Order.

## II.   LEGAL STANDARD

The Village argues that Plaintiff's claims against it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative that summary judgment should be granted in its favor. (Doc. 28). A court must treat a Rule 12(b)(6) motion to dismiss as a motion for summary judgment when the court considers matters outside the plaintiff's complaint. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("A motion to dismiss for failure to state a claim . . . must be converted into a motion for summary judgment whenever the

---

[5] In a separate Memorandum Opinion and Order, the Court denied the Yost defendants' Motion for Leave to File Cross-Claim Complaint for Indemnification against the Village. (Doc. 60).

district court considers matters outside the pleadings.") (citing Fed. R. Civ. P. 12(b)(6)).  When converting a motion to dismiss into a motion for summary judgment, a court must generally give the parties notice of the changed status of the motion and provide them with an opportunity to present all material pertinent to the motion for summary judgment.  *See* Fed. R. Civ. P. 12(d); *Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995).

 Here, the Village filed its Motion as a Rule 12(b)(6) motion to dismiss, or, in the alternative, a Rule 56 motion for summary judgment, putting the parties on notice that the Court might consider the motion as one for summary judgment.  *See* (Doc. 28).  Because both the Village and Plaintiff presented evidence outside the pleadings for the Court's consideration, the Court is not required to give the parties additional notice before treating the Village's Motion as one for summary judgment.  *See Wheeler v. Hurdman*, 825 F.2d 257, 259-60 (10th Cir. 1987) (explaining that the court is not required to provide additional notice before treating a motion to dismiss as a motion for summary judgment when both parties submit materials beyond the pleadings in support of their briefs).  Since the Court considers factual matters outside the pleadings as to Plaintiff's remaining claims against the Village, the Court construes the Village's Motion as one for summary judgment as to those claims.  *See Lowe*, 143 F.3d at 1381.

 "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A mere scintilla of evidence in the non-movant's favor is not sufficient.  *Anderson*, 477 U.S. at 252.  However,

the court must consider all the evidence in the light most favorable to the party opposing summary judgment.  *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record" to support their factual positions.  Fed. R. Civ. P. 56(c)(1)(A).  Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B); *see also Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'") (citation omitted)).  Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

**III.    ANALYSIS**

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  There are two types of claims that arise under the Due Process Clause, procedural due process and substantive due process.  The Tenth Circuit has explained the difference between the two types of claims as follows: "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  "[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."  *Id.*

(citing *Weathers v. West Yuma County Sch. Dist. R–J–1*, 530 F.2d 1335, 1340-42 (10th Cir.1976) (absence of a protectible property interest foreclosed further inquiry into plaintiff's procedural and substantive due process claims)).

In her surreply, Plaintiff argues that her protected property interest is her "legitimate claim of entitlement that the Village would not allow development in violation of its existing zoning classification applicable to the adjoining property unless the Village complied with the requirements of the Corrales Village Code." (Doc. 67) at 2. Because the Yost defendants' property (as well as Plaintiff's property) is zoned A-1 under the Village Code, which allows only one dwelling per acre, the "zoning provided a density of development and a degree of open space that the Plaintiffs purchased when they purchased their property." *Id.* at 2-3. Plaintiff contends that when the Village allowed the Yost defendants an additional dwelling without initiating the Village Code's variance process, including the notice and hearing process and making factual findings to justify the variance, the Village violated Plaintiff's "entitlement that the Village will follow its own ordinances with regard to the A-1 zoning and any variances to that zoning." *Id.* at 3-5.

The Village argues in response that Plaintiff cannot allege a violation of the Due Process Clause as a third party. (Doc. 87) at 2-3. Because Plaintiff is "merely claiming the indirect benefit of the Village's enforcement of applicable zoning ordinances on a neighbor's property" and is not "challenging the Village's enforcement of zoning ordinances with respect to [her] own property," Plaintiff has not been deprived of any due process protections. *Id.* at 4 ("Plaintiffs' benefit arises incidentally to the government enforcing zoning ordinances, and therefore does not give rise to a due process claim under federal law."). The Village also contends that Plaintiff's due process claims fail because the Village has discretion regarding its zoning decisions,

11

including appeals of such decisions. *Id.* at 6-8 ("[A]s Plaintiffs have no vested interest in their property being zoned as A-1, the allegation that the Defendant Village has issued a building permit in violation of the A-1 zoning does not give rise to any type of taking without due process.").

To prevail on a due process claim under Section 1983, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Nichols v. Bd. of Cty. Comm'rs*, 506 F.3d 962, 969 (10th Cir. 2007). A property interest exists in the constitutional sense where a litigant can demonstrate a "legitimate claim of entitlement" to the claimed benefit. *Hyde Park Co.*, 226 F.3d at 1210. There is a "simple distinction between government action that directly affects a citizen's legal rights … and action that is directed against a third party and affects the citizen only indirectly or incidentally." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 767 (2005) (quoting *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 788 (1980)). In *Town of Castle Rock*, the United States Supreme Court held that the "respondent did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband." 545 U.S. at 768 (stating "[t]his result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.'") (citations omitted). The Supreme Court relied on *O'Bannon*, in which it had held that indirect benefits conferred on Medicaid patients when the Government enforced minimum standards of care for nursing-home facilities did not trigger due process protections because "an indirect and incidental result of the Government's enforcement action … does not amount to a deprivation of any interest in life, liberty, or property." 447 U.S. at 787. Similarly, in *Simon v. Taylor*, the Tenth Circuit considered a due process claim against the New Mexico Racing Commission brought by the owners of a horse that placed second in a race. 794 Fed. Appx. 703, 707-10 (10th

12

Cir. 2019). The plaintiffs challenged the Commission's refusal to allow them to participate in disciplinary proceedings against the winning horse's trainer. The Tenth Circuit denied the due process claim, explaining that the plaintiffs' alleged property interest in the prize money "arises incidentally" from state action directed at the first-place horse's trainer, "rather than directly from state action directed at [the plaintiffs]." *Id.* at 710, n.4 ("[T]he indirectness of the alleged property interest further supports our conclusion that the Simons lacked a protected property interest in the prize money.").

Here, Plaintiff asserts that her protected property interest stems from the Village failing to properly enforce its zoning classification as to the Yost defendants' property. However, the Village's approval of the Yost defendants' building was not an action directed at Plaintiff and it affected Plaintiff only indirectly or incidentally. Plaintiff relies on *Albuquerque Commons Partnership v. Albuquerque City Council*, in which a developer asserted due process claims against the City Council based on rezoning decisions. 2009-NMCA-065, 146 N.M. 568, 212 P.3d 1122. The New Mexico Court of Appeals held that the developer had a protected property interest in the continued zoning of its land, and actions by the City to "downzone" the land triggered certain requirements, such as for a hearing and making findings of either a mistake in the original zoning or subsequent changed conditions in the neighborhood. 2009-NMCA-065, ¶¶ 6-10, 18 ("[T]he property right in the present case is the right to continued zoning in the face of spot downzoning, absent a showing of evidence under [relevant laws]."). Importantly, the property at issue in *Albuquerque Commons* was held by the developer itself—the developer was not asserting a right to due process in the zoning of another party's land. *See id.* at ¶ 6 ("[I]t is well settled under New Mexico law that a property owner has no vested right in a particular zoning classification."). Because Plaintiff does not challenge the Village's enforcement of

13

zoning ordinances with respect to her own property, the right she asserts arises incidentally to the Village's actions and, therefore, does not constitute a federally protected property interest under the Due Process Clause.[6]

Even if Plaintiff has asserted a federally protected property interest, she must also demonstrate that the Village's discretion in making zoning decisions is limited by requirements to follow certain procedures. "[I]n the municipal land-use context—where the asserted property interest is a right to particular action or inaction by city zoning authorities" the Court's analysis of the entitlement to due process should focus "on the level of discretion allowed to the zoning authority under the applicable state and local zoning laws." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1237 (10th Cir. 2016) (citing *Hyde Park Co.*, 226 F.3d at 1210). "A legitimate claim of entitlement to a particular land-use decision exists only when that decision is legally mandatory: where the land-use authority's 'discretion is limited by the procedures in question,' and those procedures, 'if followed, require a particular outcome.'" *Id.* (quoting *Nichols*, 506 F.3d at 970). In contrast, "where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is implicated." *Id.* Moreover, the litigant asserting a property interest in a particular zoning decision bears the burden to "demonstrate that a set of conditions exist under state and local law" that so limit the land-use authority's discretion as to make the decision legally mandatory. *Id.* (quoting *Hyde Park*, 226 F.3d at 1210).

---

[6] To further illustrate, the Village's appeal provisions (Sections 8-34(a) and 18-49(a)) permit "any person aggrieved" by a decision of the building inspector or Village Administrator to appeal that decision to the Governing Body of the Village. (Doc. 36) at 59-60). In the Village's January 24, 2019 letter to Plaintiff it states that Plaintiff is not an aggrieved person as to the building certificate issued to the Yost defendants. (Doc. 28-3) at 2.

14

The Corrales Village Code provides the Village wide discretion in granting a variance or zone map amendment. Sections 18-48(f) and (i) set forth conditions for the Planning and Zoning Commission and Governing Body to consider for a request for a variance or zone map amendment. *See* (Doc. 67) at 19-21 (for example, the Commission should consider accessibility to property, automobile and pedestrian safety, emergency access, and "[t]he overall health and safety of the community") (Section 18-48(i)(1)-(8)). Nevertheless, the Code does not require certain findings to be made, and provides that the Planning and Zoning Commission and Governing Body may "impose any condition deemed to be in the best interests of the Village." (Doc. 67) at 19-20.

Plaintiff argues her due process rights were violated when the Village failed to enforce its zoning requirements, provide a hearing, and properly consider her appeals. Plaintiff again relies on *Albuquerque Commons Partnership*, but that case does not support Plaintiff's claims. Instead, the applicable state laws and zoning regulations in *Albuquerque Commons* required the City of Albuquerque to make specific findings prior to downzoning, and it was these "substantive and direct limitations on the City's discretion" that created a property right to continued zoning absent evidence meeting the required criteria. 2006-NMCA-065, ¶¶ 8-9, 14, 18, 26 ("When attempting to accomplish the type of downzoning at issue in this case, the City has no discretion to proceed without providing evidence to justify the change in accordance with these criteria. … [W]e conclude that ACP has a federally protected property interest to continued zoning under the narrow circumstances presented by this case."). Here, however, the Village's discretion is not so limited that the outcome of the Yost defendants' building permit application depended on the Village following certain procedures. And while the Village's Code provides for a hearing process, the Tenth Circuit has made clear that "the mere existence of an entitlement

15

to a hearing under state law, without further substantive limitation," fails to give rise to an independent property interest. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1116-17 (10th Cir. 1991) ("Zoning bodies generally are granted wide discretion in their zoning decisions.") (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Hewitt v. Helms*, 459 U.S. 460, 471 (1983)); *see also MOJO Built, LLC v. Prairie Vill., Kansas, City of*, 2021 WL 826239, at *3 (D. Kan.) ("[T]he right to a hearing in and of itself … does not create an interest protected by the Fourteenth Amendment.").

A case with zoning provisions similar to the Corrales Village Code is *Hyde Park Co.*, where a developer asserted a constitutionally protected property right in the approval of a proposed subdivision plat that complied with all applicable city ordinances. 226 F.3d at 1209. In considering the developer's due process claim, the Tenth Circuit explained: "While we are not altogether unsympathetic to Hyde Park's quandary, we conclude that the applicable ordinances read as a whole fail to place any discernible substantive limitations on the City Council's discretion in this matter, and thus fail as a matter of federal constitutional law to establish more than Hyde Park's unilateral expectation that the City Council would approve its proposed plat." *Id.* at 1210. Absent "clearly defined limitations on the City Council's exercise of discretion to assist us in our construction of local law," the Tenth Circuit held that the developer did not have a federally protected right, and emphasized: "[W]e hesitate to infer such limits and involve this federal court in a land use regulation dispute which is purely a matter of local concern." *Id.*; *see also Jacobs, Visconsi & Jacobs, Co.*, 927 F.2d at 1116 (finding the landowners did not have a protected property right as to rezoning of their property because the zoning body's discretion was not limited and state law only provided "suggestions" for the zoning body to consider). Likewise in this case, the Village Code read as a whole fails to place any discernible substantive

16

limitations on the Village's discretion as to its zoning regulations, so no federally protected property interest is implicated.

IV. **CONCLUSION**

Based on the foregoing, the Court concludes that Plaintiff has not demonstrated entitlement to a federally protected property right in the Village's decision to approve the Yost defendants' building permit. This decision forecloses further inquiry into Plaintiff's procedural and substantive due process claims. *See Hyde Park Co.*, 226 F.3d at 1210 ("[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."); *Weathers v. West Yuma County Sch. Dist. R–J–1*, 530 F.2d 1335, 1340-42 (10th Cir.1976) (absence of a protectible property interest foreclosed further inquiry into plaintiff's procedural and substantive due process claims). Therefore, the Court grants the Village's Motion to Dismiss or for Summary Judgment as to Plaintiff's Procedural Due Process and Substantive Due Process claims asserted under the United States Constitution (Count X).

Consequently, all of Plaintiff's claims against the Village are dismissed and no federal claims remain. The Court declines to exercise supplemental jurisdiction over the remaining state law claims asserted against the Yost defendants. *See* 28 U.S.C. § 1367(c)(3) (providing that courts may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction"); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); *Quiroz v. ConocoPhillips Co.*, 310 F. Supp. 3d 1271, 1313 (D.N.M. 2018) ("The Court has previously

17

stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.").

IT IS THEREFORE ORDERED that Defendant Village of Corrales' Motion to Dismiss or in the Alternative for Summary Judgment, (Doc. 28), is GRANTED as to the remaining due process claims, and all of Plaintiff's claims against Defendant Village of Corrales are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

IT IS FINALLY ORDERED that this action is REMANDED to the Thirteenth Judicial District Court, Sandoval County, New Mexico. The Clerk is hereby directed to take the necessary actions to remand the case.

IT IS SO ORDERED.

                                              KEVIN R. SWEAZEA
                                              UNITED STATES MAGISTRATE JUDGE
                                              Presiding by Consent